959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Timothy H. JOHNSON, Petitioner-Appellant,
v.
Harol WHITLEY, Warden, Nevada State Prison; Attorney
General for the State of Nevada, Respondents-Appellees.
 No. 89-16009.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1990.
Submission Vacated May 28, 1991.
Resubmitted March 16, 1992.
Decided April 2, 1992.
 
 Before ALARCON, BRUNETTI and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Johnson raises one issue on appeal from the district court's denial of his petition for a writ of habeas corpus: Did Detective Eubanks' statement to Johnson constitute "interrogation" under Rhode Island v. Innis, 446 U.S. 291 (1980), and Miranda v. Arizona, 384 U.S. 436 (1966)?
 
 Facts
 
 3
 The facts are undisputed. Johnson was arrested and given his Miranda warnings. Johnson requested counsel. Detective Eubanks stated: "That's okay, no problem, we were mainly going to ask why because we already know who anyway." After about thirty to sixty seconds, Johnson confessed.
 
 Discussion
 
 4
 On a number of occasions, the Supreme Court and this court have addressed the following scenario: Pursuant to Miranda, the police advise a criminal suspect of his right to an attorney, the suspect requests an attorney, the police say or do something of which the suspect is aware, and the suspect then confesses his crime without his attorney present and before he's had a chance to consult with his attorney.
 
 
 5
 Whether that confession is admissible turns initially on whether the police statement or act constitutes "interrogation." Interrogation includes express questioning; it also includes the functional equivalent of express questioning--that is, any words or actions "that the police should have known were reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 303.
 
 
 6
 In Innis, a taxicab driver had been robbed by a man wielding a sawed-off shotgun. The driver identified Innis as the man who had robbed him. Police officers then arrested Innis (who did not have a shotgun on him) and advised him of his Miranda rights. Innis requested a lawyer. Three officers then placed Innis in a police car and drove him to the police station. On the way, two of the officers engaged in a conversation concerning the missing shotgun. One of the officers said there were "a lot of handicapped children running around in this area" and "God forbid one of them might find a weapon with shells and they might hurt themselves." Id. at 294-95. Another officer stated "it would be too bad if the little [girl] would pick up the gun, maybe kill herself." Id. at 295. Innis interrupted the conversation and told the officers to turn the car around so that he could show them where the gun was located.
 
 
 7
 The Court held this was not interrogation for two reasons. First, there was no express questioning. Second, "[i]t cannot be said, in short, that [the officers] should have known that their conversation was reasonably likely to elicit an incriminating response from [Innis]." Id. at 302. The Court relied on three facts in reaching that conclusion: (1) "the entire conversation appears to have consisted of no more than a few offhand remarks"; (2) "[t]his is not a case where the police carried on a lengthy harangue in the presence of the suspect"; and (3) "under the circumstances, the officers' comments were [not] particularly 'evocative.' " Id. at 303.[1]
 
 
 8
 In Shedelbower v. Estelle, 885 F.2d 570 (9th Cir.1989), cert. denied, 111 S.Ct. 975 (1991), we confronted a similar case. Officers brought Shedelbower into the police station for questioning. They read him his Miranda rights. After some questioning, Shedelbower asked for an attorney. One of the officers, as he was preparing to leave, told Shedelbower that Shedelbower's partner in crime had been taken into custody, and that the female victim had identified Shedelbower as one of the men who had raped her and murdered her friend. (It was in fact not true that the victim had identified Shedelbower.) Shedelbower then confessed. We held that the officer's statements did not constitute interrogation. The officer's statements "did not call for nor elicit an incriminating response. They were not the type of comments that would encourage Shedelbower to make some spontaneous incriminating remark." Id. at 573.
 
 
 9
 We also addressed a similar situation in United States v. Thierman, 678 F.2d 1331 (9th Cir.1982). After Thierman asserted his right to counsel and desire to remain silent until counsel was present, officers in Thierman's presence stated how they were going to have to contact Thierman's family, friends and acquaintances about the alleged crimes Thierman committed. One of the officers remarked that it was too bad that Thierman's girlfriend had to become involved. A few minutes later, Thierman led the police to the evidence of his crime. We noted the similarities of the case to Innis: "In both cases, the conversations were brief and concerned the likely course of the police investigation and the possible consequences of the suspect's failure to cooperate with the police.... There is nothing in the record to compel a finding that the police conversation was more evocative than the one at issue in Innis." Id. at 1336.[2]
 
 
 10
 In light of Innis, Shedelbower and Thierman, it's impossible to conclude here that Detective Eubanks' statement constitutes interrogation. Detective Eubanks acceded to Johnson's request for an attorney, stating, "[t]hat's okay, no problem." And he then stated what the police would have asked had Johnson not requested an attorney: "[W]e were mainly going to ask why because we already know who anyway." Telling Johnson that the police already knew who was not a problem. Everyone arrested and brought to the police station should realize that the police think they know who committed the crime; that's why they were arrested in the first place. Telling Johnson the police would have asked him why he did it is a little closer to the line, but still nowhere near as evocative as the statements in the other cases that have been held not to constitute the functional equivalent of interrogation.
 
 
 11
 In sum, we agree with the district court's analysis:
 
 
 12
 In general, the precedents ... hold that the use of subtle psychological techniques by police officers do not constitute "interrogation." In light of these precedents, this Court finds that Detective Eubanks' statement was well within the boundaries of acceptable psychological tactics.... [T]his statement certainly was less likely to elicit an incriminating response than the statements that were found not to constitute interrogation in Innis, Shedelbower, and Thierman.
 
 Opinion at 8-9 (citations omitted).[3]
 Conclusion
 
 13
 Detective Eubanks' statement did not constitute interrogation.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Court also noted that nothing in the record suggested that the officers were aware that the suspect was "peculiarly susceptible" to such an appeal or that the police knew the suspect was "unusually disoriented or upset at the time of his arrest." Id. at 302-03; see infra note 3
 
 
 [2]
 In Collazo v. Estelle, 940 F.2d 411 (9th Cir.1991), cert. denied, 112 S.Ct. 870 (1992), the primary issue was whether police interrogation had produced the defendant's subsequent confession. In Derrick v. Peterson, 924 F.2d 813 (9th Cir.1990), cert. denied, 112 S.Ct. 161 (1991), the primary issue was whether the defendant had knowingly and intelligently waived his Miranda rights. Here, by contrast, the issue is whether the officer's statement constituted interrogation in the first place
 
 
 [3]
 There's also nothing in the record to indicate that Johnson was "peculiarly susceptible" to the officer's statement, or that Johnson was "unusually disoriented or upset" when at the station. Innis, 446 U.S. at 302-03